**E-FILED**
Friday, 10 June, 2016  02:34:44 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| Andy Aguilar, *on behalf of himself and all others similarly situated*,<br><br>  Plaintiff,<br>v.<br><br>State Farm Mutual Automobile Insurance Company,<br><br>  Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Andy Aguilar, by and through his undersigned counsel, pleading on behalf of himself and all others similarly situated, states as follows:

### INTRODUCTION

1. Plaintiff, Andy Aguilar ("Plaintiff"), brings this class action for damages resulting from the illegal actions of State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant"). Defendant placed unauthorized automated text messages and telephone calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3. State Farm is the parent company of a series of interrelated insurance and financial services companies. State Farm set up an SMS texting service whereby consumers were sent automated messages on a continuing basis regarding their insurance accounts.

4. State Farm is required to allow consumers to opt out of the SMS texting service. Indeed, State Farm's text messages told customers to "Reply . . . STOP to cancel":



5. However, State Farm ignored the opt out demands and consumers were sent unauthorizedautomated text messages to their cellular telephones, in violation of the TCPA.

6. Moreover, State Farm placed automated calls featuring prerecorded voice messages to consumers' cellular telephones instructing consumers to return the call to State Farm. State Farm did not heed consumers' requests to cease its prerecorded voice calls.

7. Plaintiff is such a consumer. He received State Farm's automated text messages and requested via response text message that they "Stop." *See* images *supra*. They continued. Plaintiff also received State Farm's automated calls featuring a prerecorded voice. Plaintiff called State Farm and requested that the prerecorded calls too stop. The prerecorded calls too

continued. State Farm's continued automated text messages and prerecorded voice message calls violated the TCPA. Plaintiff brings this putative class action on behalf of himself and all consumers similarly situated.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendant resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

10. The Plaintiff, Andy Aguilar ("Plaintiff") is, and at all times mentioned herein was, an adult individual residing in Nashville, Tennessee.

11. State Farm is a Delaware corporation headquartered in Bloomington, Illinois.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

12. The TCPA regulates, among other things, the use of automated telephone dialing systems ("autodialer").

13. Specifically, 47 U.S.C. § 227(b)(1)(A)(iii) prohibits any call using an autodialer to a cellular phone without prior express consent by the person being called or an emergency purpose.

14. 47 U.S.C. § 227(a)(1) defines 'autodialer' as equipment having the capacity –

    (A)    to store or produce telephone numbers to be called, using a random or sequential number generator; and

    (B)    to dial such numbers.

15. According to the Federal Communications Commission ("FCC"), an autodialer "encompass[es] any equipment that stores telephone numbers in a database and dials them

without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an autodialer where plaintiffs alleged that the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

16. "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, ¶ 132 (2003) ("2003 FCC Order") ("The basic function of [an autodialer], however, has not changed—the capacity to *dial* numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.").

17. Moreover, the FCC has made clear that it is a system's capacity to dial randomly or sequentially that determines whether it is an autodialer, not its "present ability." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, FCC 15-72, at ¶ 15 (July 10, 2015) ("2015 FCC Order"); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[T]he clear language of the TCPA 'mandates that the focus be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir.

2009))). In other words, "even when the equipment presently lack[s] the necessary software, it nevertheless [may have] the requisite capacity to be an autodialer." 2015 FCC Order, at ¶ 16.

18. A piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition. 2015 FCC Order, at ¶ 18.

19. In sum, "[t]he basic function of [an autodialer is] the *capacity* to dial numbers without human intervention," and use of the term "capacity" is to ensure that the TCPA not be circumvented by powerful equipment capable of "dial[ing] thousands of numbers in a short period of time." 2015 Order, at ¶ 14.

20. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

2003 FCC Order, at ¶ 165; see *Satterfield*, 569 F.3d at 953.

### ALLEGATIONS APPLICABLE TO ALL COUNTS

21. State Farm placed automated text messages and prerecorded voice message calls to Plaintiff's cellular telephone number, XXX-XXX-9200. State Farm's automated text messages came from telephone number 788-36.

22. Plaintiff did not sign up or ask to receive text messages from State Farm.

23. State Farm's text messages stated that a payment was required to keep Plaintiff's policy active, and asked him to contact State Farm. *See* images *supra*.

5

24. Moreover, State Farm placed calls to Plaintiff's cellular telephone featuring prerecorded voice messages. The prerecorded voice messages asked Plaintiff to return State Farm's call.

25. Plaintiff was annoyed and inconvenienced by the repeated text messages to his cellular telephone. Accordingly, Plaintiff responded "Stop" to get the text messages to stop.

26. State Farm responded: "State Farm Alerts is canceled. You will receive no more msgs." However Plaintiff did receive more messages. *See* images *supra*.

27. Plaintiff called State Farm at 800-440-0098, spoke to a female representative, and requested that State Farm cease sending text messages and prerecorded voice messages to his cellular phone. Plaintiff requested that State Farm contact him only by mail. State Farm's representative stated that State Farm would comply with Plaintiff's request.

28. However, State Farm continued to place automated text messages and prerecorded voice messages to Plaintiff's cellular telephone.

29. The continued automated text and prerecorded voice messages were annoying and frustrating to Plaintiff, and an invasion of Plaintiff's privacy.

30. The text messages and prerecorded voice messages placed to Plaintiff's cellular phone by Defendant were made with an autodialer as defined by 47 U.S.C. § 227(a)(1) and the FCC.

31. Defendant's text messages were template-based.

32. Defendant's text messages and prerecorded voice message calls were automatically sent without human involvement. Defendants' dialing system connected to a list or database of telephone numbers and automatically selected Plaintiff's number to be messaged at a preset rate when the system indicated that a payment was due.

6

33. The telephone number messaged by Defendant was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

34. The messages from Defendant to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## CLASS ACTION ALLEGATIONS

### A. The Class

35. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

36. Plaintiff represents, and is a member of the following classes (the "Classes"):

**Class 1: All persons within the United States who received on their cellular telephone at least one text message from Defendant, responded via text message commanding that Defendant cease sending text messages, and, from June 10, 2012 to the present, received at least one additional text message to the same cellular telephone number other than a text message confirming that Defendant would cease placing text messages.**

**Class 2: All persons within the United States who received on their cellular telephone at least one prerecorded voice message call from Defendant, instructed Defendant to cease placing prerecorded voice message calls to their cellular telephone, and, from June 10, 2012 to the present, received at least one additional prerecorded voice message call from Defendant to their cellular telephone.**

37. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the class members number in the thousands. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

38. Upon information and belief, Defendant placed automated text and prerecorded voice messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

39. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

C. **Common Questions of Law and Fact**

40. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

   (A) Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an autodialer;

   (B) Whether Defendant placed non-emergency prerecorded voice message calls to Plaintiff and Class members' cellular telephones;

   (C) Whether Defendant placed non-emergency calls to Plaintiff and Class members' cellular telephones using an autodialer;

   (D) Whether Defendant can meet its burden of showing it obtained prior express consent to place each call;

   (E) Whether Defendant's conduct was knowing and/or willful;

   (F) Whether Defendant is liable for damages, and the amount of such damages; and

   (G) Whether Defendant should be enjoined from such conduct in the future.

41. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely sends automated text and prerecorded voice messages

to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

D. **Typicality**

42.  Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

E. **Protecting the Interests of the Class Members**

43.  Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

F. **Proceeding via Class Action is Superior and Advisable**

44.  A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

45.  Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill. May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal. May 29, 2012).

**COUNT I**
**Violations of the Telephone Consumer Protection Act,**

**47 U.S.C. § 227, et seq.**

46. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47. Defendant sent multiple automated text and prerecorded voice messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

48. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

49. Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

50. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

51. Plaintiff and the Classes are also entitled to and do seek a declaration that:

- Defendant violated the TCPA; and
- Defendant placed automated text and prerecorded voice messages to the Plaintiff and the Classes without prior express consent.

**COUNT II**
**Knowing and/or Willful Violations of the**
**Telephone Consumer Protection Act,**
**47 U.S.C. § 227, et seq.**

52. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

53. Defendant knowingly and/or willfully sent multiple automated text and prerecorded voice messages to cellular telephone numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

54. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

55. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

56. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

57. Plaintiff and the Classes are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;
- Defendant knowingly and/or willfully placed automated text and prerecorded voice messages to Plaintiff and the Classes;
- Defendant willfully disregarded consumers' requests that Defendant cease placing automated text and prerecorded voice messages to their cellular telephones;
- It is Defendant's practice and history to place automated text and prerecorded voice messages to consumers without prior express consent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA

pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: June 10, 2016

>Respectfully submitted,
>PLAINTIFF, ANDY AGUILAR
>
>By: */s/ Sergei Lemberg*
>Sergei Lemberg, Esq.
>LEMBERG LAW, L.L.C.
>43 Danbury Road, 3rd Floor
>Wilton, CT 06897
>Telephone: (203) 653-2250
>Facsimile: (203) 653-3424
>*Attorneys for Plaintiff*